Robert J. LaFORGE

v.

TAFT–PIERCE MANUFACTURING CO.

No. 83–552–Appeal.

Supreme Court of Rhode Island.

June 13, 1986.

Raul L. Lovett, Lovett, Schefrin & Gallogly, Ltd., Providence, for petitioner.

James A. Currier, Kiernan Currier & Plunkett, Joanne McTiernan, Anderson Henning & Anderson, Providence, for respondent.

## OPINION

KELLEHER, Justice.

In this workers' compensation dispute the employee appeals from a decree of the appellate commission of the Workers' Compensation Commission after a trial commissioner's denial of the employee's petition to review an agreement whereby the employee had in the first half of 1978 received from his employer's insurance carrier compensation benefits of about $3,600. Hereafter we shall refer to the employee by his first name.

The factual background giving rise to the payments is undisputed. On January 12, 1978, Robert, a toolmaker, suffered a severe fracture of the skull when he was struck by a "piece of metal" that "flew off" a machine. The injury required the insertion of a protective metal plate the size of a silver dollar in Robert's skull. He returned to work in late May 1978.

Time marched on, and on July 13, 1981, Robert again sought his physician's assistance, complaining of pain and tenderness at the site of the 1978 injury. The physician, a neurologist, ordered a series of diagnostic tests and told his patient to remain off work until his complaint and the tests were evaluated. Robert underwent a series of tests, including a CAT scan, a brain wave, and X rays of the skull and neck area. The neurologist also prescribed Librium in response to his patient's complaint as to nervousness and anxiety. During this period Robert was also examined, at the behest of his employer, by a second neurologist.

When Robert in August 1981 filed a petition seeking a review of the June 1978 compensation award because of a return of his 1978 incapacity, he assumed the burden of proving that his 1981 complaints were indeed related to his 1978 injury. *Coletta v. Leviton Manufacturing Co.*, 437 A.2d 1380, 1383 (R.I. 1981). Here Robert's neurologist testified by way of deposition. The neurologist's concern was the metal plate—whether it had moved or served as a source of infection or whether a clot had

developed beneath it. Either factor would have caused Robert's discomfort. As a precaution, the neurologist advised Robert to stay off the job until the plate factor had been evaluated. Once the neurologist evaluated the results of the CAT scan, the brain wave, and the X rays, he was convinced that the metal plate was not the source of Robert's 1981 complaints. Consequently, he told his patient to return to work and said, "The studies were O.K., all I can offer you * * * is medication" or, as he subsequently acknowledged, a "psychiatrist."

Attached to the neurologist's deposition were three of his reports relative to Robert's complaints. In two of the reports the neurologist noted that Robert had complained about his immediate superior's "being tough on him" and about Robert's being "uptight" because he was "getting pushed around by somebody." After the neurologist had suggested that Robert seek some psychiatric help, he received a call from his patient and was told by him that he was not going to seek any help but was going to return to work.

The neurologist who examined Robert on behalf of his employer on September 18, 1981, reported that Robert's headaches and pains were unrelated to the 1978 injury but were tension-type headaches. The neurologist also told the trial commissioner that when Robert complained of pain and headaches to him, he said the pain was emanating from the back of his head rather than from the area where the metal plate was situated. This witness suggested a "return to work and a normal life style."

When Robert returned to work in November 1981, he said that the headaches were less severe. His continued employment was interrupted by hernia surgery, and he returned to his position as a toolmaker in mid-March 1982.

At the conclusion of the testimony of the neurologist hired by the employer, the trial commissioner rendered a bench decision in which he reviewed the evidence and found that Robert had failed to prove that the time spent away from the job in 1981 was related to his 1978 injury. The appellate commission affirmed this finding. This court's task in considering appeals regarding the factual findings of a Workers' Compensation Appellate Commission is extremely limited. Our guiding principle continues to be that if there is any legally competent evidence to support the commission's findings, this court will, in the absence of fraud, affirm those findings. *Carter v. ITT Royal Electric Division*, 503 A.2d 122, 124 (R.I. 1986). It is obvious from the record that we cannot fault the choice made by the appellate commission.

The employee's appeal is denied and dismissed, the decree appealed from is affirmed, and the case is remanded to the Workers' Compensation Commission.